ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| FEDERICO CARDONA FIRPI<br><br>*EX PARTE*<br><br><br>Apelante<br><br><br>Persona en interés:<br>GABRIELA RIVERA<br>EMANUELLI | KLAN202300763 | Apelación procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Criminal Núm.: D JV2023-0183<br><br>Sobre:<br>Ley 408-2000, según enmendada, Ley Salud Mental de PR |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz y la jueza Mateu Meléndez

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico a 27 de octubre de 2023.

Comparece Federico A. Cardona Firpi, en adelante el señor Cardona o el apelante, y solicita que revoquemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de Bayamón, en adelante TPI. Mediante la misma, se ordenó el archivo de la petición de tratamiento compulsorio presentada por el apelante para internar a su esposa, la señora Gabriela Rivera Emanuelli, en adelante, la señora Rivera o la apelada. El foro apelado razonó que conforme al Art. 4.13 de la *Ley de Salud Mental de Puerto Rico,* en adelante la Ley Núm. 408-2000, el señor Cardona no puede presentar la petición porque tiene conflicto de interés con la señora Rivera.

Por los fundamentos que expondremos a continuación, se confirma la sentencia apelada.

## -I-

El señor Cardona presentó una *Petición de Detención Temporera de Veinticuatro (24) Horas*[1] conforme al Art. 4.13 de la Ley Núm. 408-2000, para internar a su esposa, la señora Rivera. Simultáneamente, presentó una *Petición de Orden de Tratamiento Compulsorio*[2], conforme al Art. 4.11 de dicha ley.

Como consecuencia de estas peticiones, la señora Rivera fue ingresada en el Hospital Pavía de Hato Rey. Además, el día en que fue dada de alta se le otorgó a su favor una orden de protección ex parte al amparo de la Ley Núm. 54-1989 de violencia doméstica, en contra del señor Cardona.[3]

Por su parte, el señor Cardona también obtuvo una orden de protección contra la señora Rivera, al amparo de la Ley Núm. 54-1989.[4]

Entre tanto, la apelada presentó una demanda de divorcio contra el apelante.[5]

Posteriormente, el TPI celebró una vista para atender la petición del señor Cardona al amparo del Art. 4.11 de la Ley Núm. 408-2000. En esa ocasión, determinó lo siguiente:

> Dado al evidente conflicto de intereses [conforme al Art. 4.13 de la Ley Núm. 408-2000] del Sr. Federico Cardona Firpi resolvemos que éste está impedido de participar y/o de ser informado de asuntos tan confidenciales y sensibles que se ventilan en éstos tipos de casos. El Sr. Federico Cardona Firpi tiene un interés litigioso, de naturaleza civil y criminal en contra de la Sra. Gabriela Rivera Emanuelli. El día de la vista se indicó que podía ser sustituido por otra parte que no tuviera conflicto de intereses con la Sra. Gabriela Rivera Emanuelli.[6]

---

[1] Apéndice del apelante, págs. 5-8.
[2] *Id.*, págs. 9-12.
[3] *Id.*, págs. 3-4.
[4] *Id.*
[5] *Id.*
[6] *Id.*

Insatisfecho con dicha determinación, el señor Cardona presentó un *Escrito de Apelación* en el que alega que el TPI incurrió en los siguientes errores:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE EL APELANTE ESTABA IMPEDIDO DE SER EL PETICIONARIO BAJO EL PRECEPTO DE QUE EXISTÍAN PROCESOS CIVILES Y CRIMINALES ENTRE LAS PARTES, PROHIBIENDO ASÍ QUE HUBIESE UNA VISTA EN SU FONDO, COARTANDO ASÍ EL DERECHO A UN DEBIDO PROCESO DE LEY, ACTUANDO CON CLARO PREJUICIO, PARCIALIDAD Y ERROR MANIFIESTO.

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LOS PROCESOS SIN RECIBIR INFORME ALGUNO DEL EQUIPO INTERDISCIPLINARIO NI INFORMACIÓN ALGUNA DE UN PROFESIONAL DE LA SALUD, SIN ASEGURARSE DEL BIENESTAR DE LA PARTE APELADA, LO QUE CONSTITUYÓ UN CLARO ABUSO DE DISCRECIÓN.

Examinados los escritos de las partes, el expediente y la prueba documental, estamos en posición de resolver.

**-II-**

La Ley Núm. 408-2000, según enmendada, expresa, en su exposición de motivos, que velar por la salud mental del pueblo puertorriqueño "es y debe ser un asunto de entero interés para el Gobierno de Puerto Rico".[7] Esta legislación aplica, entre otros, a "toda persona que necesite, solicite, reciba o haya recibido servicios de salud mental".[8]

En lo pertinente, este estatuto provee para la presentación de una petición de internación civil de una persona, si se observan los siguientes factores, a saber:[9]

> […] los parámetros de peligrosidad en cuanto a probable daño a sí mismo, a otros o a la propiedad o ha llevado a cabo actos que ponen en peligro su vida, o ha ejecutado actos que indican que no puede manejar su vida cotidiana sin la supervisión o ayuda de otras personas, por no poder alimentarse, protegerse o cuidarse, aumentando así la probabilidad de muerte, daño corporal sustancial o debilitamiento físico tal que pondría en peligro su vida.[10]

---

[7] Ley Núm. 408-2000, 24 LPRA sec. 6152 *et. seq.*
[8] 24 LPRA sec. 6152a.
[9] *Ruiz v. Alcaide*, 155 DPR 492, esc. 53 (2001).
[10] 24 LPRA sec. 6152b.

Antes de emitir la orden, el tribunal determinará si existe una recomendación del psiquiatra a cargo de la evaluación inicial de la persona a quien se pretende internar, que sustente la petición.[11] Emitida la orden, la persona evaluada incurrirá en un desacato al tribunal, de no asistir al tratamiento.[12]

Entre las alternativas provistas, la Ley Núm. 408-2000 contempla un mecanismo expedito que aplica cuando "una persona de dieciocho años o más, requiere de tratamiento inmediato para protegerlo de daño físico a sí, a otros o a la propiedad".[13] En este caso, un agente de seguridad o cualquier otro ciudadano con base razonable para creer que la persona necesita tratamiento inmediato, "podrá presentar ante el Tribunal de Primera Instancia con competencia, una petición juramentada de detención temporera por hasta veinticuatro (24) horas para la evaluación del adulto por un equipo inter o multidisciplinario".[14]

> El tribunal podrá conceder tal petición, siempre que la petición juramentada contenga y fundamente lo siguiente:
>
> […]
>
> (c) la relación entre el peticionario y el adulto sujeto a ingreso involuntario, **así como una declaración del peticionario, sobre si tiene o no algún tipo de interés con dicho adulto, tal como sería el caso, pero no limitado a, algún interés económico o litigioso, ya sea de naturaleza civil o criminal.**[15]

Por otro parte, existe la posibilidad de extender el término de evaluación y tratamiento expedito si, dentro de las veinticuatro horas dispuestas en la orden de detención temporera, se radica en el tribunal una petición de ingreso involuntario por un máximo de

---

[11] Art. 4.11 de la Ley Núm. 408-2000 (24 LPRA sec. 6155j).
[12] *Id.*
[13] Art. 4.13 de la Ley Núm. 408-2000 (24 LPRA sec. 6155l).
[14] *Id.*
[15] *Id.* (Énfasis suplido).

quince días.[16] El tribunal, antes de expedirla, deberá constatar que la petición incluya una primera certificación, emitida por un psiquiatra, en la cual el profesional de la salud mental establezca que la persona "reúne los criterios para ingreso involuntario y hospitalización de inmediato en una institución hospitalaria o a cualquier otra institución proveedora, para recibir tratamiento".[17]

**-III-**

El apelante alega que el TPI realizó "una pobre aplicación del derecho… al determinar que… no podía figurar como peticionario en el caso" y que actuó contrario a la ley al desestimar la solicitud sin el informe y las recomendaciones del equipo médico. Arguye que el foro apelado discriminó en su contra sin ningún fundamento en derecho y que se limitó a esbozar un conflicto de intereses bajo los criterios del Art. 4.13 de la Ley Núm. 408-2000. En su opinión, "[d]icho articulado no es un requisito *sine qua non*, mucho menos una cláusula de prohibición en torno a quién puede constituir o no una parte peticionaria". Por tanto, afirma que una vez el TPI atendió la petición de ingreso involuntario por un periodo de veinticuatro horas, "si un peticionario es o no, uno idóneo para los procedimientos de tratamiento compulsorio, son académicos". Además, advierte que el TPI debió celebrar una vista evidenciaria, previo a concluir, que, por motivo del conflicto de intereses, el señor Cardona no podía ser la persona de enlace con el personal del hospital a cargo del tratamiento de su esposa. Por consiguiente, entiende que el TPI abusó de

---

[16] Art. 4.14 de la Ley Núm. 408-2000 (24 LPRA sec. 6155m).
[17] *Id.*

su discreción, actuó con perjuicio y parcialidad, y falló en velar por el bienestar de la señora Rivera, todo ello en contravención con lo dispuesto en la Ley Núm. 408-2000.

Por su parte, la apelada alega que corresponde confirmar la sentencia impugnada. Esto es así, porque para efectos de la Ley de Salud Mental la relación entre el peticionario y el adulto sujeto a ingreso involuntario es muy importante. Por ello, el Legislador encomendó al Juez a auscultar la existencia de algún tipo de interés bien sea económico, litigioso, criminal o civil entre estos componentes del esquema legislativo. Y del trámite litigioso del presente caso se desprende que el apelante tenía varios conflictos en asuntos importantes con la apelada, por lo cual correspondía su descalificación como peticionario del proceso bajo la Ley de Salud Mental.

Además para la apelada, el mismo resultado se hubiese alcanzado si no aplicara el Art. 4.13 (c) de la Ley de Salud Mental. Ello obedece a que la autorización del apelante como enlace hubiese equivalido a una violación *de facto* de la orden de protección que la apelada había obtenido a su favor.

Luego de revisar integradamente el Art. 4.13 de la Ley Núm. 408-2000 con los documentos que obran en el expediente, determinamos que procede confirmar la sentencia apelada. Veamos.

El apelante tiene un interés litigioso adverso de naturaleza civil con la señora Rivera que emana del pleito de divorcio instada por ésta.

Del resultado de lo anterior, puede surgir además un interés económico adverso, producto de la liquidación de la comunidad de bienes post ganancial consecuencia de la disolución del matrimonio.

Como si lo anterior fuera poco, existe un interés litigioso adverso de naturaleza penal que surge de las órdenes de protección que cada parte ha obtenido contra la otra.

Ante ese cuadro fáctico, somos de la opinión de que acertó el TPI, como cuestión de umbral, al descalificar al apelante como promovente en tan delicado asunto. De este modo evitó que se arrojaran sombras sobre tan importante procedimiento que protege el bienestar de las personas con trastornos mentales.

### -IV-

Por los fundamentos antes expuestos, se confirma la sentencia recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones